UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITE HERE! LOCAL 2,

    Plaintiff,

    v.

STIX HOLDINGS, LLC, et al.,

    Defendants.

Case No. 23-cv-01498-RS

**ORDER GRANTING IN PART AND DENYING IN PART ATTORNEYS' FEES AND COSTS**

## I. INTRODUCTION

Following the previous order granting its motion to enforce an arbitration award, Plaintiff United Here! Local 2 has moved to recover its attorneys' fees and costs from Defendants Pick Up Stix SFO LLC and Stix Holdings LLC under the district court's "inherent powers" to issue sanctions. Pursuant to Civil Local Rule 7-1(b), this matter is suitable for disposition without oral argument; the hearing set for August 10, 2023 is therefore vacated. For the reasons articulated below, the motion for fees and costs is granted in part and denied in part.

## II. BACKGROUND[1]

Plaintiff and Defendant were parties to a Card Check Neutrality Agreement ("Agreement") requiring strict neutrality from Defendant Pick Up Stix SFO LLC as to the unionization of employees at the Pick Up Stix in SFO airport. Rather than abide by the Agreement, the SFO store

---

[1] As a more complete factual and procedural background is recited in the order granting Plaintiff's motion to confirm and enforce the arbitration award, only the most salient facts are presented here.

attempted various tactics to dissuade its employees from unionizing, before finally closing (and terminating all employees) on February 7, 2023, the very day after the union demanded recognition. Defendant further knowingly and openly refused to participate in an expedited arbitration hearing before the arbitrator specified in that Agreement, despite notice from Plaintiff and instructions from the Arbitrator that all argument and evidence had to be presented at a hearing, rather than via the various *ex parte* presentations Defendant attempted. On March 6, 2023, the Arbitrator found in favor of Plaintiff, ordering Defendant to, among other things, reopen its SFO location and reinstate its employees, with back pay. Defendant did not comply, necessitating Plaintiff's filing of a motion to confirm and enforce the arbitration award a month thereafter, on April 6, 2023, which was granted on May 19, 2023.

## III. LEGAL STANDARD

There are "[t]hree primary sources of authority" which "enable courts to sanction parties or their lawyers for improper conduct: (1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power." *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001). Plaintiff proceeds under the third—the court's inherent powers—which requires a showing that "the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)); *see also Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006) ("[T]he court must make an express finding that the sanctioned party's behavior "constituted or was tantamount to bad faith.").

## IV. DISCUSSION

Defendants raise five main areas of objection: (1) fees are not warranted against Stix Holdings, LLC; (2) fees incurred prior to the motion to confirm and enforce the arbitration award—e.g., those relating to the arbitration—are not recoverable; (3) opposition to the motion to confirm and enforce the arbitration award was not in bad faith, and therefore should not give rise to fees; (4) Plaintiff's requested fees are excessive; and (5) Plaintiff's costs are not recoverable.

### A. Pick Up Stix SFO LLC vs. Stix Holdings LLC

As Defendants correctly identify, Stix Holdings LLC was not party to the Agreement, and therefore not subject to the arbitration provisions contained in that Agreement. Though Plaintiff acknowledges that a delineation between the two entities was clearly outlined in the previous order, it refers only to its "alter ego allegations in the Petition to Confirm and Enforce Arbitration Award," which alleges in a single paragraph, on information and belief, "a unity of interest between Respondents STIX SFO LLC and STIX HOLDINGS, LLC, such that any individuality and separateness between them has ceased," and either entity is "the alter ego" and "a mere shell, instrumentality, and conduit" for the other. Dkt. 1 at 2-3.

"Under California law, there are two general requirements for establishing an alter ego theory: (1) there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Baker v. Chin & Hensolt, Inc.*, 2010 WL 147954 (N.D. Cal. 2010) (quotation marks and citation omitted). "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Orosa v. Therakos, Inc.*, 2011 WL 3667485, *6 (N.D. Cal. 2011) (quoting *Neilson v. Union Bank of California*, 290 F.Supp.2d 1101, 1116 (C.D. Cal. 2003)) (quotation marks omitted).

Though certain facts in this case certainly may support the alter ego theory, Plaintiff here has neither advanced arguments to establish it, nor mounted a response to the declaration by Lorne Goldberg, CEO of Stix Holdings LLC, which Defendants filed to bolster their argument that Stix Holdings LLC and Pick Up Stix SFO LLC are distinct business entities. *See* Dkt. 34-1 (noting that the two entities have different dates and places of formation, articles of organization, financial accounts, employees, and labor policies). Without those specifics, Plaintiff's allegations are too conclusory to disturb the corporate form. Accordingly, Plaintiff's motion as to STIX HOLDINGS LLC is denied.

### B. Scope of Recoverable Fees

As to Defendant Pick Up Stix SFO LLC, a finding of bad faith has already been made on the basis of both its "knowing refusal to participate in the arbitration," and its decision to "simply refuse[] to honor the award rather than filing a petition to vacate it, and request[ing] a vacation of the award only in response to the union's petition to confirm it." Dkt. 26 at 7-8. The finding has clear support in the caselaw. Contrary to Defendant's belief that fees can only be recovered for "actions taken before the Court itself"—or that Plaintiff's motion proceeds under 28 U.S.C. § 1927[2]—the Ninth Circuit has indicated that "[i]t is clear that bad faith supporting an award of attorneys' fees may be found in *conduct that led to the lawsuit* or in conduct occurring during the course of the action," *Int'l Union of Petroleum & Indus. Workers v. W. Indus. Maint., Inc.*, 707 F.2d 425, 428 (9th Cir. 1983) (cleaned up) (emphasis added), and that "[b]ad faith may be demonstrated by showing that a defendant's obstinancy in granting a plaintiff his clear legal rights necessitated resort to legal action with all the expense and delay entailed in litigation." *Id.* (citation omitted). Indeed, "sanctions are justified when a party acts *for an improper purpose*—even if the act consists of making a truthful statement or a non-frivolous argument or objection." *Fink*, 239 F.3d at 992.

Moreover, courts have found bad faith in circumstances similar to those present here. The Ninth Circuit has held "that an unjustified refusal to abide by an arbitrator's award may equate [with] an act taken in bad faith, vexatiously or for oppressive reasons," *Pac. Gas & Elec. Co. v. SEIU Loc. 24/7*, No. C 10-05288 SBA, 2012 WL 4120253, at *2 (N.D. Cal. Sept. 17, 2012) (citing *Int'l Union of Petroleum*, 707 F.2d at 428), *aff'd* (Oct. 23, 2014); and specifically that "a party can act in bad faith in failing to respect an arbitration award if the party simply refused to honor the award rather than file a petition to vacate it, forcing the other side to file a petition to confirm it." *Healthcare Workers' Union Loc. 250, SEIU, AFL-CIO, CLC v. Am. Med. Reponse*, No. CVF05-1333 AWIDLB, 2006 WL 2949262, at *2 (E.D. Cal. Oct. 16, 2006) (citing *Sheet Metal Workers'*

---

[2] Because Plaintiff's motion proceeds on the court's inherent powers, Plaintiff does not need other contractual or statutory authorization to request attorneys' fees.

*Intern. Association Local Union No. 359 v. Madison Industries, Inc. of Arizona*, 84 F.3d 1186, 1192 (9th Cir.1996)).

Under this authority, it is clear that attorneys' fees are recoverable for any action taken by Plaintiff to vindicate its award after the Arbitrator issued his opinion on March 6, 2023.[3] As to the fees accumulated prior to the opinion, however, that is a much closer call. Defendant argues that the fees incurred by Plaintiff for the underlying arbitration are fees Plaintiff would have incurred anyway, and perhaps incurred more of, had Defendants participated; and further takes issue with the "one-sided arbitration," arguing Plaintiff's proper recourse should have been to file an action to compel arbitration. Plaintiff argues the *ex parte* arbitration was necessary because of the "urgent need" to reopen the store and reinstate the wrongfully terminated employers before Defendant could have renegotiated an early end to its lease at SFO, and caselaw suggests that "the Court may fairly consider the totality of [Defendant's] bad faith conduct in connection with this matter in determining the proper fee award." Dkt. 37 at 3.

While there may have been other avenues open to Plaintiff—filing a motion to compel alongside a motion for permanent injunction or a temporary restraining order to prevent a feared lease renegotiation, for example—the Agreement's arbitration provision provides for disputes to be resolved through arbitration. Plaintiff is not inaccurate in arguing that a motion to compel could have delayed the arbitration by at least a month, and for reasons already addressed in the order confirming the arbitration award, the ex parte proceeding was not improper.[4] In this context,

---

[3] Contrary to Defendant's assertions, the Ninth Circuit has also explained that "[f]or purposes of imposing sanctions under the inherent power of the court, a finding of bad faith 'does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees." *Fink*, 239 F.3d at 992 (citation and quotation marks omitted).

[4] Defendant raises an entirely new argument as to why the Arbitrator did not have jurisdiction over Plaintiff's claims, arguing that *San Diego Bldg. Trades Unions v. Garmon*, 359 U.S. 236 (1959) preempts claims brought under federal statutes which are founded on alleged violations of the NLRA, as recognized in *Smith v. Nat'l Steel & Shipbuilding Co.*, 125 F.3d 751, 755 (9th Cir. 1997). Defendant entirely misreads *Smith*, which explicitly notes that "the Supreme Court has indicated on several occasions that *Garmon* preemption is not implicated where the potential conflict is with federal law," *id.* at 755 (citing cases) and "several of our sister circuits have

Defendant's arguments that the ex parte arbitration was somehow elective ignore the realities of the situation.

Furthermore, in explaining the propriety of awarding attorneys' fees, the Ninth Circuit has also explained that such fees satisfy "a dual purpose—deterrence and compensation": "[t]he threat of an award of attorneys' fees tends to deter frivolous dilatory tactics," just as "[t]he award also compensates a plaintiff 'for the added expense of having to vindicate clearly established rights in court." *Int'l Union of Petroleum*, 707 F.2d at 428. "These considerations," moreover, "are particularly apt in the context of labor arbitration," where "[e]ngaging in frivolous dilatory tactics not only denies the individual prompt redress, it threatens the goal of industrial peace." *Id.*

In the totality of Defendant's behavior before and after the arbitration—including the abrupt shutdown of the SFO store in response to unionization, along with the subsequent refusal to appear in the arbitration (even to present its own evidence) and legal opposition of the award only after Plaintiff filed suit—there is ample evidence of obduracy, dilatory motive, and bad faith. It would seem, certainly, a perverse outcome to insulate Defendant from the costs of its unjustified refusal to arbitrate. Given the aims of the court's inherent powers to award attorneys' fees and the entire context of Defendant's behavior,[5] it cannot be said that awarding Plaintiff the fees for the underlying arbitration would constitute a windfall.

### C. Amount of Recovery

Defendant next offers a declaration from John D. O'Connor, an attorney who has experience as a consultant and expert witness in attorney fee disputes, to argue that the amount of

---

addressed this issue and concluded that the Garmon preemption analysis is inapplicable when the NLRA potentially conflicts with another federal statute," *id.* (citing cases); before ultimately, holding that those "cases, as well as consideration of the principles which underlie *Garmon* preemption, lead us to conclude that, in cases such as this, where the 'conflict' is between two federal statutes, *Garmon* preemption is inapplicable and a federal court may properly retain jurisdiction over non-NLRA federal claims." *Id.* at 756.

[5] Even now, Defendant charges Arbitrator Kagel with being "the Union's hand-picked arbitrator that was named in [the Agreement] that [the Union] drafted and imposed on [Defendant] as a condition to its doing business," and maintains that it "has every right not to choose to participate in that proceeding," Dkt. 34 at 8, entirely ignoring the reasoning in the previous order.

fees that Plaintiff seeks is clearly excessive. Defendant claims Plaintiff's estimates are excessive in three respects: (1) it includes fees unrelated to Defendant's "sanctionable conduct" (such as preparation for the arbitration or settlement discussions), Dkt. 34 at 13; (2) the fees are inflated due to inefficiencies—in particular, that the primary attorney on the matter, Mr. Clatterbaugh, was "approximately 40% inefficient"; and (3) the hourly rates claimed are high for this area of law, which is much simpler than class actions or other fields of complex litigation.

1. Reasonable Rates

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). As to the reasonable rate, the party seeking fees bears the burden of producing satisfactory evidence "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895, n. 11 (1984). "Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir.1990). Courts also may rely on decisions by other courts awarding similar rates for work in the same geographical area by attorneys with comparable levels of experience. *See, e.g., Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir.2009). As a general rule, the forum district—here, the Northern District of California—represents the relevant legal community. See *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir.1992).

Plaintiff seeks $600/hour for partner Emily M. Maglio (who has approximately 14 years of experience), $585/hour for partner Amy Endo (who has approximately 13 years of experience), and $400/hour for associate Micah Clatterbaugh (who has approximately 6 years of experience). Contrary to Defendant's arguments, these rates seem reasonable. Plaintiff has provided evidence indicating that its requested rates are in line with the general rates charged in the Bay Area, including specific cases that have approved similar rates ($675-725 for partners with 14 through

25 years of experience) for Leonard Carder attorneys specifically. *See*, *e.g.*, *Zoom Electric v. Horak*, Case No. 13-15441 (2015), Order, ECF No. 42 at 2; *Zoom Elec., Inc. v. Horak*, 617 F. App'x 677, 680 (9th Cir. 2015). Although several of the examples Plaintiff cites in its briefing are indeed class action cases, which Defendant argues is significantly more complex, O'Connor's general, blanket conclusions about labor law litigation fail to persuade. Indeed, his conclusory assertions that much of labor law litigation involves "repetitive issues that frequently arise," Dkt. 34-3 ("O'Connor Declaration") at 6, fail to account for certain aspects of this matter that distinguish it from a straightforward wrongful termination suit—such as the ex parte arbitration, the card check agreement, and the need to contend with arguments about NLRB preemption, among others. There is no other evidence that the work performed here is markedly less complex, and accordingly, Plaintiff's requested rates are sufficiently justified.[6] *See also Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) ("Although the state officials urge us to look only to the rates charged by other attorneys involved in prison litigation, the proper scope of comparison is not so limited, but rather extends to all attorneys in the relevant community engaged in 'equally complex Federal litigation,' no matter the subject matter.") (citation omitted).

2. Reasonable Hours

As to the lodestar hours, the party seeking fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended[.]" *Hensley,* 461 U.S. at 437. After the moving party provides evidence of the hours billed, the opposing party has the burden of submitting evidence "challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates,* 987 F.2d at 1397–98 (citing *Blum,* 465 U.S. at 892 n.5). Ultimately, district courts are obligated to review the time

---

[6] Defendant also argues that "the relevant market rate should have been the actual fees counsel charged Petitioner, which they have failed to disclose," Dkt. 34 at 13, but this is contrary to the law, which O'Connor's out-of-circuit citation does not change. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) ("We have repeatedly held that the determination of a reasonable hourly rate "is not made by reference to the rates actually charged the prevailing party.")

billed and assess whether it is reasonable in light of the work performed and the context of the case. *Common Cause v. Jones,* 235 F.Supp.2d 1076, 1079 (C.D. Cal. 2002) (citing *Sealy, Inc. v. Easy Living, Inc.,* 743 F.2d 1378, 1385 (9th Cir. 1984)). Any hours that are found not to be "reasonably expended," such as hours that are excessive, redundant, or otherwise unnecessary, should be excluded from the lodestar fee calculation. *See id.* at 433–34.

In total, Plaintiff seems to be requesting a lodestar figure based on 208.3 total attorney hours, amounting to $94,391.[7]

Defendant's argument that fees unrelated to "sanctionable conduct" should be excluded—such as the time dedicated to preparation for the arbitration, along with hours spent on settlement discussions (5.4 hours), reviewing the arbitration award (2.8 hours), and calculating backpay totals (0.9)—has largely already been answered, as Plaintiff can collect fees relating to the underlying arbitration. The 5.4 hours relating to settlement discussions, however, do seem sufficiently differentiated—and at odds with the underlying purpose of the sanctions—that they will not be awarded.

Defendant argues that Plaintiff has not justified the necessity of the hours Ms. Endo billed—8.6 hours in total[8]—as it should have been more efficient for Ms. Maglio to handle it, in light of her extensive work on, and therefore familiarity with the facts of, the case. Plaintiff's only answer is that she "performed a relatively small amount of work on this matter because Ms. Maglio had to travel . . . the morning the work needed to be done." Dkt. 37 at 12. Yet as there are billing entries labeled "AE" on March 24, 2023, March 26, 2023, March 27, 2023, May 4, 2023,

---

[7] Unable to locate a summary total in the reply brief, these figures were pieced together from the two charts attached by Plaintiff. *See* Dkt. 29-1, Ex. I (identifying a total of 200 hours ($90,827), including 15 estimated hours ($6,400) for the reply brief); Dkt. 37-1, Ex. A (identifying a total of 23.3 actual hours ($9,964) for the reply brief).

[8] Contrary to Plaintiff's assertion that this totaled 6.2 hours (which does not account for the additional hours requested for Ms. Endo for the Reply to the Motion for Fees), her total breaks down as follows: 3.2 hours relating to the Petition to Confirm the Arbitration Award, 3.1 hours relating to the Reply for the Petition to Confirm the Arbitration Award, and 2.4 relating to the Motion for fees.

July 5, 2023, and July 6, 2023, that clearly does not paint the full picture. Plaintiff does not meet its burden as to these hours, and therefore these 8.6 hours will also not be awarded.

Defendant argues these hours were inflated by inefficient staffing: O'Connor, specifically opines that attorney Clatterbaugh was "about 40% inefficient" and that, "had Ms. Maglio carried the laboring oar or focused Mr. Clatterbaugh's work related to drafting, counsel's billings would have been far less." Dkt. 34-3 at 8.[9] Though O'Connor doesn't provide a methodology to support the 40%, he does identify specific entries he believes are inflated: 3.7 hours drafting the proposed order for the arbitrator, 0.9 hours researching the magistrate judge, 3.7 hours related to the stipulation to extend time (of which 2.8 hours were billed for drafting the stipulation). Of these, the last item—spending nearly 4 hours on a straightforward stipulation that took no more than 2 pages of text—does seem excessive, particularly as Defendants had previously filed a joint stipulation to extend time that Plaintiff could have used as a template. *See* Dkt. 14. The other entries, however, do not raise the same concerns. Unlike the stipulation, it is conceivable that Plaintiff would wish to spend time on their proposed order—the remedy they are seeking—and 3.7 hours do not seem excessive in that context. As to the 0.9 hours, O'Connor conveniently ignores that the 0.5 hour entry on March 30, 2023 lists "review local rules and standing orders" in addition to "conduct research on magistrate judge assigned to case"—a task that certainly warrants careful review.[10] In the same vein, the aggregate time Clatterbaugh spent—19.8 hours drafting the arbitration brief,[11] 44.1 hours for the Petition and Motion to Confirm, 11.3 Motion to Confirm Reply Brief, for example—also does not seem excessive. Therefore, although two hours will be deducted for drafting the stipulation to extend time, no across-the-board percentage reduction to

---

[9] As an example, O'Connor explains: "Mr. Clatterbaugh billed 19.8 hours drafting the arbitration brief to Ms. Maglio's 1.5 hours, despite Ms. Maglio handling the client intake and case development and expending 14.1 hours preparing for arbitration." Dkt. 34-3 at 8.

[10] Even without a review of the local rules, the less than 1 hour spent on this task does not seem excessive.

[11] Here, again, Plaintiff's brief presents an inaccurate number. *See* Dkt. 37 at 10 (claiming Clatterbaugh billed 18.9 hours for researching and drafting the arbitration prehearing brief).

the hours will be applied.

3. Costs

Finally, Plaintiff may also recover its costs. *See Int'l Union of Petroleum*, 707 F.2d at 428 ("The federal labor policy favoring voluntary arbitration dictates that when a refusal to abide by an arbitration decision is without justification, and judicial enforcement is necessary, the court should award the party seeking enforcement reasonable costs and attorneys' fees incurred in that effort.") (quoting *Int'l Ass'n of Machinists & Aerospace Workers Dist. 776 v. Texas Steel Co.*, 639 F.2d 279, 284 (5th Cir. 1981)).

In yet another display of its lack of proofreading, however, Plaintiff fails to justify the amount of costs it seeks. As Defendants correctly point out, Plaintiff seeks a total of $12,805.36 in costs, and yet the entries on its chart total only to $7,182.16. Worse still, Plaintiff provides no response for this in their Reply. Particularly as the moving party, Plaintiff bears the burden to establish that the amounts of fees and costs it requests are warranted, but its meager effort here leaves much to be desired. Plaintiff will be awarded only $7,182.16.

## V. CONCLUSION

Plaintiff's motion for fees and costs is granted as to Pick Up Stix SFO LLC with some modifications. From the request for fees of $94,391, $2,540 will be deducted for the 5.4 hours spent on settlement, $5,031 will be deducted for the hours worked by Ms. Endo, and $800 will be deducted for 2 hours spent on the stipulation to extend time, for a total of $86,020 in fees. $7,182.16 in costs will be awarded.

**IT IS SO ORDERED**.

Dated: August 4, 2023

RICHARD SEEBORG
Chief United States District Judge